**FILED**
**Sep 10, 2021**
**09:21 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| **GELACIO JUAREZ MATUZ,** | ) | **Docket No. 2020-08-0071** |
| **Employee,** | ) | |
| **v.** | ) | |
| **TROXEL MANUFACTURING LP,** | ) | **State File No. 11920-2019** |
| **Employer,** | ) | |
| **And** | ) | |
| **AMERICAN CASUALTY CO. OF** | ) | **Judge Deana Seymour** |
| **READING, PA,** | ) | |
| **Carrier.** | ) | |

---

### EXPEDITED HEARING ORDER
_____

This case came before the Court on September 1, 2021, for an Expedited Hearing. Mr. Matuz requested the Court order Troxel to pay for surgery recommended by his former authorized physician or, alternatively, for an injection recommended by his current authorized physician. Thus, the central legal issue is whether Mr. Matuz is likely to prove at a hearing on the merits that he is entitled to the surgery or to the injection.[1] For the reasons below, the Court holds that at this time Mr. Matuz is not entitled to the surgery but is entitled to the injection.

### History of Claim

Mr. Matuz claimed injury to his low back while working in Troxel's warehouse on February 1, 2019. Troxel accepted the claim and authorized treatment with orthopedic surgeon Dr. Raymond Gardocki.[2]

---

[1] The Court originally set an Expedited Hearing for July 29, 2020. After two continuances, the parties filed a Notice of Compromise, and the Court removed the hearing from its docket. Later, Mr. Matuz filed a motion to enforce the compromised agreement, and the Court reset the case for this Expedited Hearing.

[2] Although no panel form was admitted into evidence, the parties agreed that Mr. Matuz selected Dr. Gardocki from a panel.

Dr. Gardocki saw Mr. Matuz for primarily left-sided low-back pain. He diagnosed a degenerative L5-S1 disc and prescribed medication and physical therapy.

Physical therapy helped slightly, but Mr. Matuz's back pain continued. Dr. Gardocki ordered a lumbar MRI, which showed degeneration at L4-5 and L5-S1 with a disc herniation on the left at L4-5 and stenosis at L5-S1. He believed the pain was coming from both levels and performed epidural injections. Dr. Gardocki noted that if the injections did not provide lasting pain relief, he would consider a two-level fusion or less invasive discectomies at L4-5 and L5-S1.

Two months later, after further therapy and anti-inflammatories failed to resolve Mr. Matuz's back pain, Dr. Gardocki advised that surgery for two-level degenerative disc disease "is something we want to avoid at all costs." Dr. Gardocki referred Mr. Matuz to a physiatrist in his clinic for more epidural injections since they had given him some relief in the past. He advised that if they did not provide relief, he would see Mr. Matuz back to consider surgery.

Troxel denied the injections, and Mr. Matuz returned to Dr. Gardocki requesting surgery. Dr. Gardocki again told Mr. Matuz that "[a] two level lumbar fusion for two level degenerative disc disease and a manual laborer who is 43 years old with mild disc degeneration on the MRI is a terrible idea for an operation and not a good indication with risk potentially making him worse."

Dr. Gardocki attempted to identify the specific area of Mr. Matuz's pain to develop a conservative treatment plan. He ordered L4-5 and L5-S1 discograms to pinpoint the specific location of the pain and an injection with bone marrow concentrate aspirate for pain relief. Troxel sent these requests through utilization review, which determined that the procedures were not medically necessary.

Mr. Matuz continued to see Dr. Gardocki for increased back pain radiating into his left leg. Dr. Gardocki ordered a repeat MRI that showed progressive degeneration at L4-5 and L5-S1 with a superimposed large left disc extrusion at L4-5. Based on these findings, Dr. Gardocki recommended a two-level fusion. He explained the two-level fusion was "not my ideal way of going about this but the only other option I would have to offer him since I can't get the discograms. And I think they even denied an injection if I remember correctly." Dr. Gardocki then moved and did not see Mr. Matuz again.

After receiving Dr. Gardocki's report, Troxel scheduled an employer's examination with orthopedic surgeon Dr. Samuel Murrell. Dr. Murrell agreed with the utilization review denial of the discograms and the injection with bone marrow concentrate aspirate to pinpoint and treat low back pain. He suggested consideration of a diskectomy of the L4-5 herniated disk if the leg symptoms worsened. Dr. Murrell did not recommend a two-level fusion because of Mr. Matuz's young age, and "because I think

2

he would be addressing more underlying discogenic type back pain, which is known to have a poor outcome, and I think it would probably be a disservice to him to recommend it."

With conflicting medical opinions concerning a treatment plan, and because Dr. Gardocki left Mr. Matuz without an authorized physician, the parties designated orthopedic surgeon Dr. Kirk Thompson as Mr. Matuz's authorized treating physician.[3] The parties agreed that Dr. Thompson would address causation and provide a treatment plan. Further, the parties agreed that Troxel's carrier would authorize reasonable and necessary medical care based on Dr. Thompson's recommendations.

Mr. Matuz saw Dr. Thompson, complaining of severe, constant, and progressive back pain as well as intermittent leg symptoms. Dr. Thompson reviewed the MRI, which he found did not explain Mr. Matuz's symptoms. Dr. Thompson recommended against two-level fusion surgery, stating, "I have talked to him about the complications associated with potential 2-level fusion surgery, adjacent level issues and the fact that he has a low probability of getting symptomatic relief." He referred Mr. Matuz to his partner, Dr. Carlos Rivera-Tavarez, for pain management. He commented, "I think frankly that is a far better option than 2-level fusion surgery. I think that hopefully with some innovative strategies that we can provide, we can give him a measure of pain relief and help him return to functional employment."[4]

Mr. Matuz saw Dr. Rivera-Tavarez, who recommended an L4-5 intradiscal injection with bone marrow concentrate aspirate with local anesthesia under fluoroscopy, and a spinal cord stimulator.

Troxel submitted Dr. Rivera-Tavarez's recommendations to utilization review. At utilization review, Dr. William Barreto determined that the Official Disability Guidelines "do not recommend intradiscal steroid injections for low back conditions since they do not improve the clinical outcome compared with placebo in patients with discogenic back pain." He explained that the guidelines do not contain recommendations for bone marrow concentrate, so he consulted another article, which noted that "bone marrow concentrate augmentation in this small randomized controlled trial failed to demonstrate positive effects on autologous local bone graft in posterolateral lumbar fusion." Based on this research, Dr. Barreto concluded that the recommended injection was not medically necessary.

Dr. Barreto also determined the spinal cord stimulator was not medically necessary for treatment of discogenic back pain without evidence of neuropathic pain. He

---

[3] The parties did not introduce any evidence that Mr. Matuz selected Dr. Thompson from a panel.

[4] The parties did not introduce any evidence that Mr. Matuz selected Dr. Rivera-Tavarez from a panel.

noted that he found no evidence of radicular neuropathic pain, and Mr. Matuz had not tried neuropathic drugs or undergone electrodiagnostic or imaging studies to confirm radiculopathy.

Based on these recommendations, Troxel denied the requested injection but authorized the spinal cord stimulator. Dr. Rivera-Tavarez inserted the spinal cord stimulator but later removed it because it was ineffective. He then recommended long-term chronic pain treatment.

At the hearing, Mr. Matuz was the only witness. He testified by an interpreter that he continues to have persistent and increasing pain in his back and left leg, and conservative treatment failed. Mr. Matuz explained that due to his pain, he cannot sleep, enjoy his family, or work.

Mr. Matuz requested the Court order Troxel to provide the two-level fusion surgery Dr. Gardocki recommended in May 2020 or provide the injection with bone marrow concentrate aspirate, recommended by Dr. Rivera-Tavarez.

Troxel countered that Dr. Murrell and Dr. Thompson strongly opposed a two-level fusion. Troxel contends that it rightfully denied the injection based on non-certification by utilization review.

**Findings of Fact and Conclusions of Law**

At an Expedited Hearing, Mr. Matuz must show that he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2020); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Here, the issue is whether Mr. Matuz presented sufficient evidence to prove the surgery, or the injection, is medically necessary. Tenn. Code Ann. § 50-6-204 (a)(1)(A).

The parties agreed that Dr. Gardocki, Dr. Thompson, and Dr. Rivera-Tavarez provided authorized medical treatment. Dr. Gardocki ended his authorized treatment when he moved. Neither Dr. Thompson nor Dr. Rivera-Tavarez were selected from a proper panel under Tennessee Code Annotated section 50-6-204(a)(3). Thus, the opinions of these two physicians are not presumed correct. *See* Tenn. Code Ann. § 50-6-204(a)(3)(H).

Without the presumption of correctness, the Court must compare the opinions of the physicians to determine medical necessity of the requested treatment. When presented with different medical opinions, the Court has discretion to determine which opinion to accept. *Patterson v. Huff & Puff Trucking,* 2018 TN Wrk. Comp. App. Bd. LEXIS 33, at *9 (July 6, 2018). The Court may consider, among other things, "the qualifications of the

experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Bass v. The Home Depot U.S.A, Inc.,* TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (May 26, 2017.)

The Court first considers Mr. Matuz's request for surgery recommended by Dr. Gardocki.

Applying the first of these factors, Dr. Gardocki, Dr. Thompson, and Dr. Murrell are orthopedic surgeons. Dr. Gardocki's and Dr. Murrell's depositions included their qualifications. Both physicians are qualified experts. Although the Court does not have Dr. Thompson's qualifications, neither party questioned his abilities. Thus, the Court cannot find any determinative differences in their expert qualifications.

Considering the other factors, Dr. Gardocki treated Mr. Matuz from February 25, 2019, until May 2020. He diagnosed degenerative discs at L4-5 and L5-S1 with herniation on the left L4-5 and stenosis at L5-S1. Dr. Gardocki recommended a conservative treatment plan, since he believed the two-level lumbar surgical option was "a terrible idea" for degenerative disc disease and "not a good indication with risk potentially making him worse."

When the initial conservative treatment failed to relieve Mr. Matuz's pain, Dr. Gardocki ordered a discogram to pinpoint the specific location of the pain and an injection of bone marrow concentrate aspirate for pain relief. Troxel sent these requests through utilization review, which were denied.

After the denial, Dr. Gardocki ordered a repeat MRI that showed worsening of Mr. Matuz's back, including a large disc extrusion. Based on these findings, Dr. Gardocki recommended a two-level fusion, noting that, while not ideal, it was the only remaining option, since other conservative treatments had been denied.

Troxel obtained an employer's examination from Dr. Murrell, who testified that he would not recommend the two-level fusion surgery because of its known poor outcome for discogenic type back pain. Dr. Murrell believed it would be a disservice to Mr. Matuz to recommend it.

Significantly, Dr. Gardocki left his practice and has not seen Mr. Matuz since May 2020. Having practiced in Dr. Gardocki's clinic, Dr. Thompson took over treatment of Mr. Matuz, reviewed his medical history, including all diagnostic tests, and formulated a treatment plan. He recommended against the two-level fusion due to complications associated with the surgery, including a low probability of symptom relief. Rather, he referred Mr. Matuz to Dr. Rivera-Tavarez for pain management, noting it was a far better option.

In sum, Dr. Gardocki stands alone in his surgical recommendation, while two duly qualified orthopedic surgeons, Dr. Murrell and Dr. Thompson, reach different conclusions. Further, as Mr. Matuz's current authorized treating orthopedic physician, Dr. Thompson gave detailed and convincing reasoning to support his opinion and referred Mr. Matuz to Dr. Rivera-Tavarez for pain management to give him a measure of pain relief and to help him return to functional employment.

The Court holds that Dr. Thompson's opinion is the most persuasive. Therefore, Mr. Matuz is unlikely to prove at a hearing on the merits that the recommended back surgery is medically necessary.

The Court now turns to Mr. Matuz's alternative request for the injection with bone marrow concentrate aspirate for pain relief. This procedure was first recommended by Dr. Gardocki and most recently by Dr. Rivera-Tavarez. Troxel relied on the utilization review decision of Dr. Barreto to support its denial of the injection.

In comparing their opinions, the Court first considers the physicians's qualifications. However, neither party questioned their expert qualifications. In the absence of any information, the Court cannot discern a difference in their respective expert qualifications.

Looking to the other factors, the Court finds the circumstances of their examinations favor Dr. Rivera-Tavarez's injection recommendation. Dr. Rivera-Tavarez personally met and examined Mr. Matuz to assist Dr. Thompson in formulating a treatment plan to relieve Mr. Matuz's pain from the work injury. As a result, Dr. Rivera-Tavarez requested Troxel authorize the injection. Troxel submitted the request to utilization review. Dr. Barreto reviewed the records and found the requested treatment was not medically necessary based on the Official Disability Guidelines.

A close inspection of Dr. Barreto's reasoning shows that the Official Disability Guidelines do not fully address the medical necessity of the injection. He must reach beyond the guidelines to assess the reasonableness of the substance of the injection: bone marrow concentrate aspirate. In doing so, Dr. Barreto located a posterior lumbar fusion trial to determine its effect on local bone grafts. He further downplayed the extent of Mr. Matuz's increasing back pain and radiation into his left leg. Unlike the authorized physicians, Dr. Barreto did not physically examine and personally discuss the degree and location of the pain with Mr. Matuz.

Finally, the Court finds Mr. Matuz credible. Tennessee law has long held that medical proof is not to be "read and evaluated in a vacuum" but instead "must be considered in conjunction with the lay testimony of the employee to how the injury occurred and the employee's subsequent condition." *Thompson v. Aetna Life & Cas. Co.*, 812 S.W. 2d 278, 283 (Tenn. 1991). Mr. Matuz testified that he has experienced constant

and increasing back and leg pain since his work injury. He has tried all treatment Troxel authorized, without relief. Mr. Matuz explained that he cannot sleep, enjoy his family, or work.

After careful analysis, the Court holds Mr. Matuz is likely to prove at a hearing on the merits that the injection recommended by Dr. Rivera-Tavarez is medically necessary.

**IT IS ORDERED** as follows:

1.  Mr. Matuz's request for two-level fusion surgery recommended by Dr. Raymond Gardocki is denied at this time.

2.  Troxel shall pay for Mr. Matuz to return to Dr. Carlos Rivera-Tavarez for the requested injection. Troxel shall remain responsible for all other reasonable and necessary medical expenses related to the February 1, 2019 injury, with Dr. Thompson for orthopedic treatment and Dr. Rivera-Tavarez for pain management.

3.  The case is set for a Status Hearing on **October 25, 2021**, at 8:30 a.m. central time. The parties must call 866-943-0014 to participate in the Hearing. Failure to call may result in a determination of issues without the parties' participation.

4.  **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.** For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED September 10, 2021.**

_____
**Judge Deana C. Seymour**
**Court of Workers' Compensation Claims**

7

**APPENDIX**

Technical Record
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Declaration of Gelacio Juarez Matuz
5. Notice of Filing Affidavit of Robert B. Snyder, M.D.
6. Joint Motion to Continue Expedited Hearing
7. Order on Joint Motion to Continue Expedited Hearing
8. Second Joint Motion to Continue Expedited Hearing
9. Order on Second Joint Motion to Continue Expedited Hearing
10. Employer's Motion to Attend Hearing via Zoom
11. Order on Employer's Motion to Attend Hearing via Zoom
12. Notice of Filing the deposition transcript of Dr. Samuel Murrell
13. Notice of Filing the deposition transcript of Dr. Raymond Gardocki
14. Notice of Filing video titled "7/10/20 D. Raymond Gardocki Deposition Video"
15. Notice of Compromise
16. Motion to Enforce Settlement Agreement
17. Employer/Defendant's Response to Plaintiff's Motion to Enforce Settlement Agreement
18. Supplemental Reply to Motion to Enforce Settlement Agreement
19. Motion for Emergency Status Conference
20. Employer's Request for Zoom/Telephonic Hearing
21. Employer's Expedited Hearing Brief
22. Notice of Filing Medical Record Certification and letter from Dr. Carlos Rivera-Tavarez

Exhibits
1. Dr. Raymond Gardocki's deposition transcript
2. Video of Dr. Raymond Gardocki's deposition
3. Dr. Samuel Murrell's deposition transcript
4. Affidavit of Dr. Robert Snyder with attachments
5. Medical Certification and letter of Dr. Carlos Rivera-Tavarez
6. Notice of Compromise
7. Dr. Carlos Rivera-Tavarez's Medical Records, March 19, 2021 (3 pages)
8. Utilization Review denial dated April 16, 2021 (Collective)
9. Dr. Carlos Rivera-Tavarez's Medical Records, July 13, 2021 (3 pages)
10. Dr. Carlos Rivera-Tavarez's Medical Records, August 17, 2021 (2 pages)

11. Declaration of Gelacio Juarez Matuz (Collective)
12. Dr. Kirk Thompson's Medical Records, November 12, 2020 (Late Filed)

**CERTIFICATE OF SERVICE**

I certify that a copy of this order was sent as indicated on September 10, 2021.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|----------------|-----|-------|------------------|
| Bryce Ashby, Employee's Attorney | | | X | bryce@donatilaw.com |
| J. Brent Moore, Employer's Attorney | | | X | bmoore@ortalekelley.com |

_____
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

9



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*